DANIEL GOULD *versus* SAMUEL WILLIAMSON *&* al.

In equity, to control the answer, the evidence against it must be equivalent to that of the testimony of two credible witnesses, testifying to the contrary.

This evidence, however, may in this, as in other cases, be by way of inference from circumstances, which are sometimes more convincing than direct testimony ; and *in the developement of fraud,* furnish almost the only source to be relied upon.

When a person will, in his answer under oath, state that to be a fact, which he believes to be true, when he has at hand the means of ascertaining whether it be true or not, it is a circumstance strongly indicative of fraud, if it be not true.

THIS was a bill in equity against Samuel Williamson, Joseph White, Samuel Hutchins, and James L. Child; and alleged, that in August, 1834, White being the owner of certain land in Pittston, gave to one Dudley and his assigns a bond with condition to convey the land to Dudley on the payment of certain sums by March 9, 1838, and Dudley went into possession thereof; that on March 9, 1838, White commenced a writ of entry against Dudley ; that this action was referred to W. Emmons, Esq. with power to determine what judgment should be rendered therein, and that the referee should give such redress to the parties, and make such award

as they would be respectively entitled to in a court of equity; that on the 13th of August, 1839, the referee made his award, that upon payment by Dudley of sixty dollars to White and the referee's charges, within three months, White should convey the land to Dudley, or his appointee, which award was accepted and judgment rendered thereon; that Dudley, for the consideration of $280, conveyed his interest in the bond to Gould, the plaintiff, who seasonably paid the referee and tendered the sixty dollars to White; that White said he had deeded the land to Hutchins, his son-in-law, and the money must be paid to him, and the deed come from him; that in October, 1839, Gould paid the amount to Hutchins, who gave a quitclaim deed of the land to Gould, the latter then giving up the bond to White; that White had not conveyed the land to Hutchins, and Gould obtained no title by his deed; that on April 4, 1840, White conveyed this with other lands to Williamson; that Williamson made a deed thereof to Nathaniel Moody, which remained in the hands of said J. L. Child to be delivered to Moody, on the payment of a certain sum of money; that Dudley has conveyed to Gould all right to the land; that the deed from White to Williamson was made without consideration, and to defraud the plaintiff and the creditors of White, and that Williamson knew that White was bound by the award to convey the land to Dudley or his assignee, the plaintiff. There was a prayer for injunction, for a decree for the conveyance of the land, and for relief generally.

Mr. Child, in his answer, admitted that a deed from Williamson to Moody was acknowledged in his office and left with him as an escrow until a certain sum of money should have been paid; and declared his ignorance in relation to all the other charges in the bill, and that he entered into no combination, &c.

The character of the answers of White, Williamson and Hutchins, as well as of the evidence in the case, sufficiently appears in the opinion of the Court.

*Wells*, in his argument for the complainant, advanced these principles of law. An award of referees, containing a condi-

tion, makes a valid judgment. *Comm. v. Pej. Proprietors*, 7 Mass. R. 399. If an award, in pursuance of an agreement annexed to the rule, be accepted, all preliminary arrangements by the parties are irrevocable, while the judgment remains in force. *Tyler v. Carleton*, 16 Maine R. 380.

As the plaintiff claims under Dudley, and the defendant, Williamson, under White, they stand in the place of the original parties, and are privies in estate. The judgment therefore binds them. 1 Stark. Ev. 192; *Adams v. Barnes*, 17 Mass. R. 365; 1 John. Ch. R. 566.

The remedy sought is appropriate. The plaintiff has paid for the property, and ought to be quieted in his title against the fraudulent attempts of White and Williamson. White was bound to convey to the plaintiff as assignee of Dudley, and Williamson, Hutchins and Moody have combined with White to defraud the plaintiff, and are equally liable with him. 2 Story's Eq. 129.

He contended that abundant cause was found in the answers and proof to sustain the bill.

*Weston*, argued on the facts, and contended that upon them, the complainant had not supported his bill. In the suit, *White v. Dudley*, the latter had no defence. The money had not been paid, and the bond had become forfeited. The award was merely that White should convey, on being paid a sum of money, but no provision was made in case he declined taking the money, and refused to convey. Neither the referee nor the Court had power to compel him to abide by the decision, and convey the land, and they did not attempt it.

It was however the plaintiff's own neglect, that he did not acquire a title. White supposed he had conveyed the premises to Hutchins, and Hutchins believed he had conveyed the same to Gould. The remaining land of White was afterwards sold to Williamson; and Hutchins, finding he had received no title, and therefore had conveyed none, offered to return the consideration money. There was no fraud in any of the transactions. The answers so state, and there is no evidence to weigh against even the testimony of one witness. The law,

however, is too familiar to require the citation of authorities, that in equity, an answer can be overcome only by the testimony if at least two credible witnesses.

*Child,* *pro se,* said he had been brought into Court as a party to this bill in consequence of the transaction of ordinary business, without the knowledge of any of the acts set forth in the bill; and that nothing took place to lead any reasonable man to suspect fraud or misconduct in the business. Whatever the decision of the Court might be with respect to the other parties, he ought to be allowed his costs.

The opinion of the Court was drawn up by

Whitman C. J. — Upon a careful review, and critical examination of the evidence in this cause, the Court are well satisfied of the truth of the allegations of the plaintiff. The defendant, Williamson, in his answer, has denied all such as impute a fraudulent combination between him and Joseph White. Having made oath to the truth of his answer, we are bound to take it to be true, unless the proof to the contrary be overwhelming. It is said, and truly, that, to control the answer, the evidence against it must be equivalent to that of the testimony of two credible witnesses, testifying to the contrary. This evidence, however, may in this, as in other cases, be by way of inference from circumstances, which are sometimes more convincing than direct testimony. In the developement of fraud it furnishes almost the only source to be relied upon. It is not often the case, that any but the participators in fraud are conusant of it; and the perpetrators of it will deny it. If fraud therefore could not be established by circumstantial evidence, even in opposition to the denial of the defendant in equity, under oath, the remedy, under a process in equity, would be, in almost every case, illusory.

What are the circumstances, then, to establish fraud and collusion in this case. The first is, that the land in controversy had, for some time anterior and nearly up to the time of the purchase of it by Williamson, been notoriously the subject of litigation between his grantor, White, and the person under whom the plaintiff claims; and a judgment had therein been

entered up, that White should convey to his adversary or his appointee, who was the plaintiff, upon certain terms, to which the plaintiff had conformed, so as to become entitled to his conveyance. Of this the defendant denies that he was conusant. But whether he was or not, the circumstances hereafter noticed may tend to show. The disclosures in his answer show that he must have been the confidential friend of White. He purchased of him all of his visible property, consisting of three parcels of real estate, lying remote from each other, two of which he avows that he was reluctant to purchase, and only purchased at the urgent solicitation of White, he admitting that he was about to go off, to be absent a long time. He admits further, that he paid for those parcels wholly in negotiable notes, amounting, as it appears, to seven hundred dollars, on a credit extending from one to seven years, in equal annual instalments. It is in evidence, and not controverted, that he was utterly destitute of property, and that White took, as collateral security, a mortgage only of one of the parcels of the real estate ; and that one under a previous mortgage, made by him for its full value, leaving the other two parcels, including the premises in controversy, unincumbered. It further appears that said Williamson had never actually occupied either of said parcels. And he states in his answer, that a writing was given by him to White, evidencing an agreement between them, that the latter should have, within a specified time, a right to have a re-conveyance of the land, on surrendering the notes given for the consideration. What that specified time was he has not disclosed. Again, he says that he was to give four hundred dollars for the two parcels of land, which he at first declined to purchase, and gave his negotiable notes therefor, payable in four years. But the whole consideration for the three parcels, as appears by White's deed to Williamson, was seven hundred dollars ; and, by the mortgage of the worthless parcel back, that the whole seven hundred dollars was divided into seven hundred dollar notes, payable annually, in from one to seven years. All this tends to show that but little reliance ought to be placed upon Williamson's statements in his answer.

In his answer, he further states, that, at the time of the conveyance to him, he was at the office of the registry of deeds, and examined the records, to see that White had a right to make the conveyance of the several parcels; yet he was content to take the parcel, incumbered with a mortgage, to its full value; and to give his notes for three hundred dollars, in payment for it, as would seem to be apparent from his mortgage deed, taken in connexion with what he says was the price of the two unincumbered parcels.

Again, he says, in his answer, that he has been informed, and verily believes, that before the 28th of October, 1839, the said White had conveyed, by deed duly recorded, the premises in question to Samuel Hutchins, and that the latter had conveyed the same to the plaintiff, according to the terms of the award set forth in the plaintiff's bill. This statement is made and filed within a few rods of the office of the registry of deeds, where the fact, which he, under oath, avers that he believed to be true, could have been verified, if there were any foundation for such belief; yet the registry of deeds, if examined, would have negatived the existence of any such fact. When a person will, under oath, state that to be a fact, which he believes to be true, when he has at hand the means of ascertaining whether it be true or not, he can scarcely be considered as many removes from the commission of downright perjury, if it be not true. He says, besides, that, before taking his deed from White, he examined the registry to see if White had a right to convey the parcels to him. Why did he not then discover this pretended conveyance to Hutchins, if it existed? and, if he did not, with what claim to be considered as having been innocently mistaken, in asserting his belief of the fact, can he present himself here?

Again, in his answer, he states, that, for the two parcels, which he was reluctant to purchase, he gave his negotiable note, payable in four years, for four hundred dollars; yet, in the deed of the three parcels, the consideration for the purchase is stated to be seven hundred dollars; and in his mortgage back, of one of the parcels, the seven hundred dollars

was secured in seven hundred dollar notes, payable annually in from one to seven years. Whence it is inferible that this statement is untrue.

On the whole, the conclusion seems inevitable, that there must have been, between White and the defendant, Williamson, a fraudulent conspiracy to enable White, among other things, to evade the making of the conveyance, which White had been ordered to make to Dudley, or his appointee, the plaintiff; and, furthermore, that the conveyance to Williamson by White was but colorable, and under a secret trust and confidence for the benefit of White.

It is therefore ordered and decreed, that the said Williamson do, forthwith, execute to the plaintiff, a good and sufficient deed, conveying to him and his heirs and assigns forever, the land set forth in the bill of the plaintiff, as having been ordered to be conveyed by the said White to the said Dudley or his appointee; and that the defendant, Child, do forthwith cancel the deed, in his possession, conveying the same land to said Moody; and that he recover of the plaintiff costs up to the filing of his answer, and including the costs of the same.

And as to the defendant, Hutchins, it cannot from the evidence, be questioned, that he was aiding said White, his father-in-law, in his endeavors to evade a compliance with the terms of the award of the said referee, Emmons, as set forth in the plaintiff's bill; and was in fact guilty of a deception in admitting the statement made by said White to the plaintiff, as set forth in the bill, to be true, when it was clearly otherwise; and by undertaking to convey the premises claimed by the plaintiff to him, in fulfilment of the award, when he must be believed to have known that he had no lawful right so to do; and thereby inducing the plaintiff to believe that he had acquired through him, a good title from White to the premises, when in fact he had not. It is therefore further ordered and decreed, that the plaintiff recover of the said Williamson and Hutchins his costs; including the bill of costs taxed and allowed to said Child.